*Amended*

**FILED**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

JUL - 1 2019

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

ROBERT W. HENRY  ,                ]  CASE NUMBER:  SA19CA0626 - OLG

LORI A HENRY                           ]

   Plaintiff(s)                          ]

                Vs.           ]

ROB VALDESPINO,  SBOT 20425002    ]

VALDESPINO & ROLON LAW FIRM       ]

OCWEN LOAN SERVICING              ]

   Defendant(s)                        ]


## CIVIL COMPLAINT FOR WRONGFUL FORECLOSURE

[ "CujusqueReiPotissima Pars"][The Principle Part Of Everything Is In The Beginning]

Plaintiff is before this court by special appearance, without waiving any rights, defenses, statutory or procedural processes to present his civil claim against the defendant's for wrongful foreclosure hereby complain and allege as following claims for relief under "Civil Rico" Federal Racketeering laws (Title 18 U.S.C. 1964) as the lender has established a "pattern of racketeering activity" by using the U.S. Mail more than twice to collect an unlawful debt and the defendants are in violation of Title 18 U.S.C. 1341, 1343, 1961 and 1962.

## Jurisdiction:

The Constitution and 28 U.S.C. § 1332 vest federal courts with jurisdiction to hear cases that "arise under" federal law. The Constitution vests federal courts with the authority to hear cases "arising under th[e] Constitution [or] the Laws of the United States." U.S. Const. art III, § 2. Congress vests federal district courts with subject-matter jurisdiction over cases involving

questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### FACTS OF THE DISPUTE:

a. The fact the defendant's filed wrongful foreclosure lawsuit in State court against the plaintiff will verify the defendant's contracted to provide a loan to the plaintiff, and the defendant's owed a legal duty to the plaintiff.

b. The defendant's duty was breached because they never provided a loan to the plaintiff.

c. The alleged loan was an exchange, of the plaintiff's signed promissory note for electronic credits from Federal Reserve.

d. Promissory Notes and other commercial instruments are legal tender and financial assets to the originator and a liability to the lender. UCC §1-201(24), §3-104, §3-306, §3-105, UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511, UCC §§9-102(9), (11), (12)(B), (49), (64), 12 USC 1813(l)(1).

e. The defendant's accounting records will show the corporation has an offsetting liability to the homeowner pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR), and the alleged loan was always an asset to the defendant's.

f. These records include: a. FR 2046 balance sheet, b. 1099-OID report, c. S-3/A registration statement, d. 424-B5 prospectus and, e. RC-S & RC-B Call Schedules.

g. The corporation never registered the commercial instrument because they knew it was a financial asset to the debtor, and there was a breach.

h. The breach of contract has damaged the plaintiff in the following manner, and plaintiff is demanding compensatory damages to reimburse the plaintiff for costs associated with the injury. All of the monthly payments made on a fake loan plus interest for the number of year's payments were made, legal expenses.

i. Plaintiff also demand punitive damages as a remedy for the defendant's conduct that was intentional and excessively reckless. The wrongful foreclosure has cause negative affect on plaintiff's credit report.

j. The plaintiff also has other claims for relief because he will prove there was or a conspiracy to deprive him of property without the administration of justice, in violation of plaintiff's due process of law under Title 42 U.S.C. 1983 (Constitutional injury), 1985 (Conspiracy) and 1986 ("Knowledge" and "Neglect to Prevent" a U.S. Constitutional Wrong).

k. Under Title 18 U.S.C.A. 241 (Conspiracy), violators "shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both."**The foreclosing party lacked standing to foreclose** because he did not have legal authority to execute the power of sale clause in the deed of trust, and therefore the "Notice of Notice of Default and Election To Sell" document has a "Fatal Defect" which robbed the legal system of Jurisdiction and the Non – Judicial foreclosure is unlawful.

l. The legal Trustee is the only person who has standing to execute the power of sale clause in the deed of trust. In this case there is no legal trustee because the promissory note and deed of trust was never registered into the trust, because it was bundled and sold during the securitizing process.

m. The deed of trust states the repayment of the debt is evidenced by the "NOTE," however the "Original" note was not filed in the record or included in the notice of notice of default and election to sell document.

n. Without that Note, the defendants cannot verify there was any debt.

o. It is well known in the legal community **a trust deed** is always used together with a **promissory note** that sets out the amount and terms of the alleged loan.

p. The deed of trust, and the promissory note must always be together, and without the note and the loan accounting entries, the attorney has failed to prove there was any debt, a second fatal flaw to the wrongful foreclosure.

Plaintiff's claims are brought forward UnderCommon Law:

### ElementsFor Common Law:

1. Controversy (The listed defendants)

2. Specific Claim (wrongful foreclosure)

3. Specific Remedy Sought by Claimant ( The courts better judgment)

4. Claim Must be Sworn To (Affidavit of Verification attached), and I will verify in open courtthat all herein be true.

## I. PARTIES:

1.1 Robert and Lori Henry, are  a resident of Bexar County, Texas.

1.2 Ocwen Loan Servicing does business in the state of Texas and at relevant times serviced a loan acquired by USAA Federal Bank and ultimately by the Federal National Mortgage Association.

1.3 Foreclosure Services is believed to be a law firm corporation operated from Texas and is in the business of conducting non-judicial foreclosures in Bexar County, Texas

## II. FACTUAL ALLEGATIONS AND FIRST CLAIM: BREACH OF CONTRACT

2.1 On or about April 2011 the plaintiffs purchased a home and obtained a mortgage loan from USAA Financial in the approximate amount $99, 655.00

2.2 The plaintiff was never provided a loan, plaintiff's signed promissory note was the source of the electronic credits claimed to be a loan to plaintiff.

2.3 The alleged loan was created with plaintiff's signature because all commercial instruments such as promissory notes, credit agreements, bills of exchange and checks are defined as legal tender, or money, by the statutes such as 12 USC 1813(l)(1), UCC §1-201(24), §3-104, §8-102(9), §§9-102(9), (11), (12)(B), (49), (64).

**2.4These statutes define a promissory note or security to be negotiable (sellable) because it is a financial asset.  This is necessary because contracts requiring lawful money are illegal pursuant to Title 31 USC §5118(d) (2). All debts today are discharged by promises to pay in the future.**

2.5 Federal Reserve notes are registered securities and promises to pay in the future. They are secured by liens on promissory notes of collateral owned by real people.

2.6 The statutes do not provide the Federal Reserve Corporation a monopoly on promissory notes, as debt collectors insist.

2.7 Plaintiff's signature created the promissory note in dispute, and it was sold to the Federal Reserve in exchange for plaintiff's signed note.

2.8 Plaintiff's promissory note never became a registered security, and a financial asset that can be negotiated because for a commercial instruments to be legal tender, they must be secured by a maritime lien on a prepaid trust account recorded at the county and registered on a UCC1. It then becomes a registered security and a financial asset that can be negotiated.

2.9 The defendant's further complicated the process by selling their payables to another entity to remove it from their balance sheet.

3.0 **This is called securitization or off-balance sheet financing.** No loan was provided to the plaintiff, and the defendant's failed to file evidence on the record to prove a contract existed.

3.1 The original contract and an accounting of the loan entries was never filed in the wrongful foreclosure case that was filed against plaintiff's property.

3.2 The Attorney who signed the "notice of foreclosure sale" document to execute the power sale clause did not have standing, nor was appointed substitute trustee properly and therefore notic of foreclosure sale

has a fatal flaw, and the foreclosure judgment must be vacated and this claim granted for full amount demanded.

### III. SCHEME TO DEFRAUD:

3.1 The contract should be rescinded because the defendant did not provide full disclosure, the contract is extremely deceptive and unconscionable, In re Pearl Maxwell, 281 B.R. 101

3.2 The Truth in Lending Act, Regulation Z, 12 CFR §226.23, states that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures. The

original debt was actually zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange.

3.3 Promissory Notes and other commercial instruments are legal tender and financial assets to the originator and a liability to the lender. If a security interest in the note is perfected, by recording it on a lien as a registered security, the maker or originator becomes an entitlement holder in the asset. **But the defendant's do not understand that they have this liability because most people are unaware of it.**

a.      UCC §1-201(24),  §3-104, §3-306, §3-105,

b.      UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511

c.      UCC §§9-102(9), (11), (12)(B), (49), (64)

d.      12 USC 1813(l)(1)

3.4 The defendant's records will show the defendants have an offsetting liability to the plaintiff pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR).

These records include:

a. FR 2046 balance sheet,

b. 1099-OID report,

c. S-3/A registration statement,

d. 424-B5 prospectus and

e. RC-S & RC-B Call Schedules

3.5 The defendant's never registered the plaintiff's signed promissory note (commercial instrument), because they know it is showing as a financial asset on their books.

3.6 The defendant's did not register the promissory note to establish a security interest in the financial asset to take the position of a secured creditor.

3.7 The promissory note is not listed on a maritime lien against the prepaid trust account and filed with the county recorder and put on a UCC1.

a. §8-102(13), §9-203; §9-505, §9-312

b. 46 USC §§31321, 31343,   46 CFR 67.250, §9-102(52), §9-317, §9-322

3.8 Plaintiff demanded the original foreclosure claim to be set off for recoupment,and to have the assets cancel out the liabilities according to:

a. FAS 140, §3-305, §3-601, §8-105, §9-404

3.9 It is a violation of both State and Federal law for a bank to sell an unregistered note that is a security that violation provides a right to rescission of the contract pursuant to Statutes.

## IV. DETRIMENTAL RELIANCE:

Detrimental reliance is a legal concept under the law of contracts. Ordinarily, a valid contract requires a proper exchange of consideration between the parties.

The plaintiff alleges facts establishing detrimental reliance:

4.1 The wrongful foreclosure case (that is the result of these claims) filed against the plaintiff in State Court will verify a. A promise was made between the parties. b. The plaintiff reliance on the promise was reasonable or foreseeable. c. There was actual and reasonable reliance on the promise. d. The reliance was detrimental.Injustice can only be prevented by enforcing the promise

4.2 The plaintiff signed a lien against his property in return for a loan and no loan was ever provided.

4.3 The plaintiff was tricked into repaying $893 a month plus taxes for 30 years, when there was never any loan provided.

4.4 The unlawful lien against the plaintiff's property blocked him from selling the property and moving his family into a nicer home.

4.5 The payments made to the defendant's interfered with the Plaintiff opening his new business, providing for his children's education because of the payments made to the defendants for the fake loan.

4.6 The payments to the defendant's for the fake loan caused  to be short of money to pay bills on time which caused the plaintiff's credit score to drop, which blocked plaintiff from getting the best financing, jobs, and plaintiff has even blocked from qualifying for housing and credit cards.

## IV. FOURTH CLAIM UNLAWFUL DECEPTION IN

## THE ORIGINAL FORECLOSURE CASE:

4.1 The Original promissory note signed to the property was the real source of the alleged loan.

4.2 Fact is the money the bank is claiming was a loan was generated by the plaintiff's signature.

## V. FIFTH CLAIM RICO:

5.1 In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate," the Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan sharking" operation.

5.2 The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action. Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, cert. denied, 473 US 906 (1985).

5.3 The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires.

5.4 The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the Congressional purpose as broadly formulated in the statute. Sedima, SPRL v. Imrex Co., 473 US 479 (1985)

## VI. SIXTH CLAIM: WRONGFUL FORECLOSURE

6.1 As a proximate result of the negligent or reckless conduct of Ocwen Loan Servicing and the attorneys Foreclosure Services the plaintiff' credit has been impaired and they are threatened with the eminent loss of their property despite the fact the bank never made a real loan.

6.2The foreclosing party did not have standing to execute the power of sale clause in the deed of trust, and therefore the "Notice of Default and Notice of Foreclosure Sale " civil document has a "Fatal Flaw" which robbed the legal system of Jurisdiction and the wrongful foreclosure is unlawful.The exhibits"A" a copy of the deed of trust will show who the alleged trustee is not the person who executed the power of sale clause, and exhibit "B" a copy of the notice of Foreclosure sale will show the attorney's name who signed the document to execute the power of sale clause. And under Penalty of Perjury that his address as well as many others is Rockwall, Texas.

6.3These documents will show the defendant who invoked the power of sale was not the true beneficiary. (See Herrera v. Federal National Mortgage Assn. (2012) 205 Cal.App.4th 1495, 1506. The plaintiff is seeking damages for wrongful foreclosure, and he hasshown that (1) there was an irregularity in the foreclosure sale and (2) the irregularity caused the plaintiff damages. See University Sav. Ass'n v. Springwoods.

6.4The legal Trustee is the only person who can sign to execute the power of sale clause in the deed of trust. In this case there is no legal trustee because the promissory note and deed of trust was never registered into the trust, because it was bundled and sold during the securitizing process.

6.5 Unless enjoined, the plaintiffs will suffer irreparable harm and will not have an adequate remedy at law.

6.6 As a proximate result of the negligent actions of both defendants, the plaintiffs have suffered consequential damage and will continue to suffer additional damage in an amount to be fully proved at the time of trial.

## VII. SEVENTH CLAIM: SLANDER OF TITLE

7.1 The defendants have caused to be recorded various documents including a Notice of Trustee Sale which has impaired the plaintiff's title which constitutes slander of title and the Consumers should be awarded resulting damages to be fully proved at the time of trial.

## VIII. EIGHTH CLAIM: VIOLATION OF THE CONSUMER PROTECTION ACT

8.1 The defendants have engaged in a pattern of unfair practices in violation of the Texas Revised Statutes Deceptive Trade Practices Consumer Protection Act ,DTPA et seq. entitling the Consumers to damages, treble damages and reasonable attorney fees and costs pursuant to the statute.

## IX. NINTH CLAIM: SLANDER OF CREDIT

9.1 The Consumers allege that the actions and inactions of the defendants have impaired their credit causing them to lose the ability to have good credit entitling them to damages, including statutory punitive damages pursuant to state and federal law, all to be proved at the time of trial.

## X. TENTH CLAIM INFLICTION OF EMOTIONAL DISTRESS

10.1 The defendants have intentionally or negligently taken actions which have caused the plaintiffs severe emotional distress.

## XI. THE ALLEDGED LOAN:

11.1 The exact monthly payments of the alleged mortgage loan varied according to property taxes and other fees paid but a typical monthly payment was $1,029.19 including reserves for the payment of taxes and insurance.

11.2 Beginning in June 2011 and continuing until August 2012 the plaintiffs made timely payments to USAA Mortgage until such time as the loan was assigned to Ocwen Loan Servicing and, thereafter, payments were made to Ocwen Loan Servicing.

11.3 In mid 2018 Ocwen Loan Servicing claimed the plaintiff was behind on payments and hired a Law Firm to commence foreclosure.

11.4 On November 8th, a Notice of Foreclosure sale was recorded by the attorney working for the Law Firm scheduling a non-judicial foreclosure for December 4th 2018, was mailed to the plaintiff, but never received. Plaintiff's acquired through County records on November 15, 2018.

11.5 Ocwen Loan Servicing and/or the attorney operating the Foreclosure Services transmitted to various credit reporting agencies, including Equifax, Trans union, and Experian false adverse information about the plaintiff, causing his credit to be impaired.

**Wherefore**, having set forth various causes of action against the defendants, the plaintiffs pray for the following relief:

1. That the actions of defendants be determined to be unfair and deceptive business practices in violation of Federal Laws, and Federal Security statutes;

2. To be awarded compensatory and punitive damages provided for in the amount of 2.1 million dollars including costs and legal expenses;

3. That the Plaintiff be awarded consequential damages to be fully proved at the time of trial;

4. That the Plaintiff be awarded fees and costs pursuant to the written loan agreements which bind the defendants; and

5. That the Court grant any other relief that may be just or equitable.

6/28/19

Robert W Henry    Lori A Henry

## CERTIFICATE OF SERVICE

I hereby certify that on  7/1/2019, the foregoing document was filed in Court, and a copy was
mailed out to Plaintiff's attorney on record

_____  7/1/2019

       Robert W. Henry         Lori A Henry

Without Prejudice UCC 1-308


Mailed to the following:

**Attorney ROB VALDESPINO   SBOT 20425002**       **Bureau of Consumer protection**

PO BOX 460035                                         **Federal Trade Commission**

San Antonio, TX  78246                   600 Pennsylvania Ave., NW.

                                            Washington, DC 20580


**ROB VALDESPINO**                             **OCWEN LOAN SERVICES**

AVT Title Services                          1691 Worthington Rd.

1102 Ridge Rd Suite 222                 West Palm Beach, FL 33409

Rockwall, TX 75087

VERIFICATION:

I' **Robert W. Henry and Lori A. Henry**, declare under penalty of perjury in accordance with the Laws of the United States of America that the foregoing is true and correct and complete to the best of my knowledge and belief.

_____    on this **28** th Day, of _____June_____ 2019
          Robert W. Henry

_____    on this **28** th Day, of ___June___ 2019
          **Lori A. Henry**

On this **28** day of **June**_____, 2019 before me, the undersigned, a Notary Public in and for the State of Texas, personally appeared the above-signed, known to me to be the one whose name is signed on this instrument, and has acknowledged to me that he has Executed the same.

Signed:_____

Printed Name: **Antoinette Arevalos**_____

My Commission Expires: **4 - 26 . 2020**_____

Date: **6 . 28 . 2019**   Common Law Seal: _____

ANTOINETTE DIANE AREVALOS
Notary Public, State of Texas
Comm. Expires 04-26-2020
Notary ID 130637042



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

## NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES.
IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE
MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR
ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE
UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE
SENDER OF THIS NOTICE, IMMEDIATELY.

1. *Property to be Sold.* The property to be sold is described as follows: LOT 78, BLOCK 8 OF DOVER SUBDIVISION UNIT
9, A SUBDIVISION IN BEXAR COUNTY, TEXAS ACCORDING TO THE PLAT RECORDED IN VOLUME 5571, PAGE
138 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 04/19/2001 and recorded in Book
14930 Page 819 Document 20110007609 real property records of Bexar County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

| | |
|---|---|
| Date: | 12/04/2018 |
| Time: | 10:00 AM |
| Place: | Bexar County Courthouse, Texas at the following location: THE AREA LOCATED OUTSIDE ON THE WEST SIDE OF THE BEXAR COUNTY COURTHOUSE WHICH IS NEAR THE INTERSECTION OF EAST NUEVA STREET AND THE CLOSED PORTION OF SOUTH MAIN AVENUE AND IS ACCESSIBLE TO THE PUBLIC AS THE COURTHOUSE & WEST AND SOUTH ENTRANCES OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE OF BEXAR COUNTY or as designated by the County Commissioners Court. |

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust,
the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the
property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition,
without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

5. *Obligations Secured.* The Deed of Trust executed by LORI A HENRY AND ROBERT W. HENRY, provides that it secures
the payment of the indebtedness in the original principal amount of $99,455.00, and obligations therein described including but
not limited to (a) the promissory note; and (b) all renewals and extensions of the note. Ocwen Loan Servicing, LLC is the
current mortgagee of the note and deed of trust and OCWEN LOAN SERVICING, LLC is mortgage servicer. A servicing
agreement between the mortgagee, whose address is Ocwen Loan Servicing, LLC c/o OCWEN LOAN SERVICING, LLC,
1661 Worthington Road, Suite 100 West Palm Beach, FL 33409 and the mortgage servicer and Texas Property Code § 51.0025
authorizes the mortgage servicer to collect the debt.

6. *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned
attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint ROB
VALDESPINO, BRENDA SOLON, OLIVIA VALDESPINO, MARTIN VALDESPINO, WES WEBB, WES HIATT OR
MICHAEL W. ZIENTZ, Substitute Trustee to act under and by virtue of said Deed of Trust.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY
DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON
SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR
MORTGAGE SERVICER.

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254

ROB VALDESPINO, BRENDA SOLON, OLIVIA
VALDESPINO, MARTIN VALDESPINO, WES WEBB,
WES HIATT OR MICHAEL W. ZIENTZ
c/o AVT Title Services, LLC
1101 Ridge Rd. Suite 222
Rockwall, TX 75087

FILE INFORMATION

Document Number: 20181200197
Date/Time: 11/8/2018 10:14:24 AM
Total Pages: 1
FILED IN THE OFFICIAL PUBLIC
RECORDS OF BEXAR COUNTY
GERARD C. RICKHOFF
BEXAR COUNTY CLERK
Total Fees $2.00

*UG-90-20181200197*

## NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**1.** *Property to Be Sold.* The property to be sold is described as follows: LOT 78, BLOCK 8 OF DOVER SUBDIVISION UNIT 9, A SUBDIVISION IN BEXAR COUNTY, TEXAS ACCORDING TO THE PLAT RECORDED IN VOLUME 9571, PAGE 128 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

**2.** *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 04/18/2011 and recorded in Book 14930 Page 819 Document 20110067609 real property records of Bexar County, Texas.

**3.** *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

Date: 12/04/2018

Time: 10:00 AM

Place: Bexar County Courthouse, Texas at the following location: THE AREA LOCATED OUTSIDE ON THE WEST SIDE OF THE BEXAR COUNTY COURTHOUSE WHICH IS NEAR THE INTERSECTION OF EAST NUEVA STREET AND THE CLOSED PORTION OF SOUTH MAIN AVENUE AND IS ACCESSIBLE TO THE PUBLIC AS THE COURTHOUSE & WEST AND SOUTH ENTRANCES OR AS DESIGNATED BY THE COUNTY COMMISSIONERS OFFICE OF BEXAR COUNTY or as designated by the County Commissioners Court.

**4.** *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

**5.** *Obligations Secured.* The Deed of Trust executed by LORI A HENRY AND ROBERT W. HENRY, provides that it secures the payment of the indebtedness in the original principal amount of $99,655.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. Ocwen Loan Servicing, LLC is the current mortgagee of the note and deed of trust and OCWEN LOAN SERVICING, LLC is mortgage servicer. A servicing agreement between the mortgagee, whose address is Ocwen Loan Servicing, LLC c/o OCWEN LOAN SERVICING, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

**6.** *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint ROB VALDESPINO, BRENDA ROLON, OLIVIA VALDESPINO, MARTIN VALDESPINO, WES WEBB, WES HIATT OR MICHAEL W. ZIENTZ, Substitute Trustee to act under and by virtue of said Deed of Trust.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254

ROB VALDESPINO, BRENDA ROLON, OLIVIA VALDESPINO, MARTIN VALDESPINO, WES WEBB, WES HIATT OR MICHAEL W. ZIENTZ
c/o AVT Title Services, LLC
1101 Ridge Rd. Suite 222
Rockwall, TX 75087

Certificate of Posting

I am _____ whose address is c/o AVT Title Services, LLC, 1101 Ridge Rd., Suite 222, Rockwall, TX 75087. I declare under penalty of perjury that on the _____ I filed this Notice of Foreclosure Sale at the office of the Bexar County Clerk and caused it to be posted at the location directed by the Bexar County Commissioners Court.

18-001037-670 // 9623 SENECA CREEK, CONVERSE, TX 78109

**FILE INFORMATION**

**Document Number: 20181200197**
**Date/Time: 11/8/2018 10:14:24 AM**
**Total Pages: 1**
**FILED IN THE OFFICIAL PUBLIC**
**RECORDS OF BEXAR COUNTY**
**GERARD C. RICKHOFF**
**BEXAR COUNTY CLERK**
**Total Fees: $2.00**

TTT/GF#2916 /Closer 50 /$\_\_\_\_\_

Return To:

**USAA Federal Savings Bank**
**10750 McDermott Freeway**
**San Antonio, TX  78288**

Prepared By:
**Linda Deleza**
**10750 McDermott Freeway**
**San Antonio, TX  78288**

————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST
#### MIN 100105600031415564

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **April 18, 2011**              ,
together with all Riders to this document.

(B) "Borrower" is **LORI A HENRY** and Robert W. Henry

Borrower is the grantor under this Security Instrument.

(C) "Lender" is **USAA Federal Savings Bank**

**702301764**                                                                                **1102094931**

**TEXAS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3044  1/01

Wolters Kluwer Financial Services
VMP®-6A(TX) (0704)

Page 1 of 16                    Initials: LAH, RWH



PLAINTIFF'S
EXHIBIT
B

Lender is **a federally chartered savings bank**
organized and existing under the laws of **the United States of America**
Lender's address is **10750 McDermott Freeway, San Antonio, TX 78288**

Lender includes any holder of the Note who is entitled to receive payments under the Note.
**(D)** "Trustee" is **Michael J. Broker**

. Trustee's address is

**USAA Federal Savings Bank, 10750 McDermott Freeway, San Antonio, TX
78288**
**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under
this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated **April 18, 2011**            .
The Note states that Borrower owes Lender **Ninety Nine Thousand Six Hundred Fifty Five
And Zero/100**                                                              **Dollars**
(U.S. $ **99,655.00**              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **May 01, 2041**
**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(M)** "Escrow Items" means those items that are described in Section 3.
**(N)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
702301764

VMP ®-6A(TX) (0704)                     Page 2 of 16                 Initials: LHH              1102094931
                                                                            RWH          Form 3044   1/01

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Bexar | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Lot 78, Block 8 of DOVER SUBDIVISION UNIT 9, a subdivision in Bexar County, Texas according to the plat recorded in Volume 9571, Page 128 of the Deed and Plat Records of Bexar County, Texas.

Parcel ID Number: 050718080780
8623 SENECA CREEK
Converse
("Property Address"):

which currently has the address of
[Street]
[City], Texas 78109
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this

702301764

VMP®-6A(TX) (0704)                    Page 3 of 16          Initials: LAH          1102094931

Form 3044  1/01

Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

702301764

VMP®-6A(TX) (0704)                    Page 5 of 16        Initials: _____        1102094931

Form 3044  1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

702301764    1102094931

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

702301764

VMP®-6A(TX) (0704)          Page 8 of 16          Initials: ____          1102094931

Form 3044  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

702301764

1102094931

Initials: LAH

RWH

VMP ®-6A(TX) (0704)                    Page 9 of 16                    Form 3044  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

702301764

Initials: _LAH_

1102094931

Form 3044   1/01

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan

702301764

VMP ®-6A(TX) (0704)                    Page 11 of 16              Initials: _LAH_              Form 3044  1/01

1102094931

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

356

702301764

VMP ®-6A(TX) (0704)          Page 12 of 16          Initials: _LAH_          1102094931

Form 3044   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

702301764                                                                    1102094931

VMP®-6A(TX) (0704)                    Page 13 of 16        Initials: _LAH_              Form 3044  1/01

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[x] **Purchase Money.**
    The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**
    The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**
    The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
    The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the

702301764                                                                    1102094931

VMP ®-6A(TX) (0704)                    Page 14 of 16         Initials: LAH      Form 3044   1/01

**STATE OF TEXAS**
County of **Bexar**

Before me *Deanna Talley*                on this day personally appeared
**LORI A HENRY**    and    Robert W. Henry

known to me (or proved to me on the oath of
or through *Photo ID*                ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this **18th**        day of **April, 2011**

(Seal)

DEANNA TALLEY
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-01-2011

Notary Public

My Commission Expires:

702301764                                          1102094931
VMP ®-6A(TX) (0704)                    Page 15 of 15        Initials: LAH        Form 3044   1/01



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page in which this certificate is affixed may have
been lawfully altered to redact confidential personal
information that is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

## NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES.
IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE
MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR
ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE
UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE
SENDER OF THIS NOTICE IMMEDIATELY.

1. *Property to Be Sold.* The property to be sold is described as follows: LOT 75, BLOCK 8 OF DOVER SUBDIVISION UNIT
9, A SUBDIVISION IN BEXAR COUNTY, TEXAS ACCORDING TO THE PLAT AND PLAT RECORDED IN VOLUME 5571, PAGE
148 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 04/19/2004 and recorded in Book
16930 Page 819 Document 20110862609 real property records of Bexar County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

Date:        12/04/2018

Time:        10:00 AM

Place:       Bexar County Courthouse, Texas at the following location: THE AREA LOCATED OUTSIDE ON
             THE WEST SIDE OF THE BEXAR COUNTY COURTHOUSE WHICH IS NEAR THE
             INTERSECTION OF EAST NUEVA STREET AND THE CLOSED PORTION OF SOUTH MAIN
             AVENUE AND IS ACCESSIBLE TO THE PUBLIC AS THE COURTHOUSE & WEST AND
             SOUTH ENTRANCES OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE
             OF BEXAR COUNTY or as designated by the County Commissioners Court.

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust,
the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the
property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition,
without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

5. *Obligations Secured.* The Deed of Trust executed by LORI A HENRY AND ROBERT W. HENRY, provides that it secures
the payment of the indebtedness in the original principal amount of $99,455.00, and obligations therein described including but
not limited to (a) the promissory note; and (b) all renewals and extensions of the note. Ocwen Loan Servicing, LLC is the
current mortgagee of the note and deed of trust and OCWEN LOAN SERVICING, LLC is mortgage servicer. A servicing
agreement between the mortgagee, whose address is Ocwen Loan Servicing, LLC c/o OCWEN LOAN SERVICING, LLC,
1661 Worthington Road, Suite 100 West Palm Beach, FL 33409 and the mortgage servicer and Texas Property Code § 51.0025
authorizes the mortgage servicer to collect the debt.

6. *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned
attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint ROB
VALDESPINO, BRENDA SOLON, OLIVIA VALDESPINO, MARTIN VALDESPINO, WES WEBB, WES PIATT OR
MICHAEL W. ZIENTZ, Substitute Trustee to act under and by virtue of said Deed of Trust.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY
DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON
SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR
MORTGAGE SERVICER.

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254

ROB VALDESPINO, BRENDA SOLON, OLIVIA
VALDESPINO, MARTIN VALDESPINO, WES WEBB,
WES PIATT OR MICHAEL W. ZIENTZ
c/o AVT Title Services, LLC
1101 Ridge Rd Suite 222
Rockwall, TX 75087

Certificate of Posting

I, ___ROB VALDESPINO___ , whose address is c/o AVT Title Services, LLC, 1101 Ridge Rd., Suite 222, Rockwall, TX
75087. I declare under penalty of perjury that on ___11-8-18___ I filed this Notice of Foreclosure Sale at the office of the Bexar
County Clerk and caused it to be posted at the location directed by the Bexar County Commissioners Court.

FILE INFORMATION

Document Number: 20181200197
Date/Time: 11/8/2018 10:14:24 AM
Total Pages: 1
FILED IN THE OFFICIAL PUBLIC
RECORDS OF BEXAR COUNTY
GERARD C. RICKHOFF
BEXAR COUNTY CLERK
Total Fees: $2.00

MACKIE WOLF 4835 NUECES HENRY, CONVERSE, TX 78109

*UG-80-20181200197*

## NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

**1. Property to Be Sold.** The property to be sold is described as follows: LOT 78, BLOCK 8 OF DOVER SUBDIVISION UNIT 9, A SUBDIVISION IN BEXAR COUNTY, TEXAS ACCORDING TO THE PLAT RECORDED IN VOLUME 9571, PAGE 128 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

**2. Instrument to be Foreclosed.** The instrument to be foreclosed is the Deed of Trust dated 04/18/2011 and recorded in Book 14930 Page 819 Document 20110067609 real property records of Bexar County, Texas.

**3. Date, Time, and Place of Sale.** The sale is scheduled to be held at the following date, time, and place:

Date:  12/04/2018
Time:  10:00 AM
Place:  Bexar County Courthouse, Texas at the following location: THE AREA LOCATED OUTSIDE ON THE WEST SIDE OF THE BEXAR COUNTY COURTHOUSE WHICH IS NEAR THE INTERSECTION OF EAST NUEVA STREET AND THE CLOSED PORTION OF SOUTH MAIN AVENUE AND IS ACCESSIBLE TO THE PUBLIC AS THE COURTHOUSE & WEST AND SOUTH ENTRANCES OR AS DESIGNATED BY THE COUNTY COMMISSIONERS OFFICE OF BEXAR COUNTY or as designated by the County Commissioners Court.

**4. Terms of Sale.** The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

**5. Obligations Secured.** The Deed of Trust executed by LORI A HENRY AND ROBERT W. HENRY, provides that it secures the payment of the indebtedness in the original principal amount of $99,653.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. Ocwen Loan Servicing, LLC is the current mortgagee of the note and deed of trust and OCWEN LOAN SERVICING, LLC is mortgage servicer. A servicing agreement between the mortgagee, whose address is Ocwen Loan Servicing, LLC c/o OCWEN LOAN SERVICING, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

**6. Substitute Trustee(s) Appointed to Conduct Sale.** In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint ROB VALDESPINO, BRENDA ROLON, OLIVIA VALDESPINO, MARTIN VALDESPINO, WES WEBB, WES HIATT OR MICHAEL W. ZIENTZ, Substitute Trustees to act under and by virtue of said Deed of Trust.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Parkway Office Center, Suite 900
14160 North Dallas Parkway
Dallas, TX 75254

ROB VALDESPINO, BRENDA ROLON, OLIVIA VALDESPINO, MARTIN VALDESPINO, WES WEBB, WES HIATT OR MICHAEL W. ZIENTZ
c/o AVT Title Services, LLC
1101 Ridge Rd. Suite 222
Rockwall, TX 75087

**Certificate of Posting**

I am _____ whose address is c/o AVT Title Services, LLC, 1101 Ridge Rd., Suite 222, Rockwall, TX 75087. I declare under penalty of perjury that on _____ I filed this Notice of Foreclosure Sale at the office of the Bexar County Clerk and caused it to be posted at the location directed by the Bexar County Commissioners Court.

18-001057-670 // 8623 SENECA CREEK, CONVERSE, TX 78109

### FILE INFORMATION

**Document Number: 20181200197**
**Date/Time: 11/8/2018 10:14:24 AM**
**Total Pages: 1**
**FILED IN THE OFFICIAL PUBLIC RECORDS OF BEXAR COUNTY**
**GERARD C. RICKHOFF**
**BEXAR COUNTY CLERK**
**Total Fees: $2.00**

MWZM No. 19-50325-Tag    Doc#2-3    Filed 02/23/19    Entered 02/23/19 19:51:17    Exhibit   Pg 8 of 8

DATE: 10/4/2018

PROPERTY: 78 _____
LEGAL: Lot 78, Blk 8, Dew Subdivision

My name is Robert D Valdespino _____. I am the Substitute Trustee for all properties noticed for sale today under my ___ in Bexar County. Please be advised that all sales conducted by me are subject to the following terms and conditions.

All property offered for sale today will be sold to the highest bidder for cash or cashiers checks. The purchase price is due and payable without delay upon acceptance of the bid unless the purchaser and Substitute Trustee agree upon a reasonable time for the purchaser to deliver the funds. If the funds are not tendered upon acceptance of the bid or within an agreed-upon time period, property offered for sale today will be sold to the next highest bidder, or the sale will be re-auctioned at the discretion of the Substitute Trustee. All property offered for sale today will be sold "AS IS" without any expressed or implied warranties. Purchaser buys the property "at the purchaser's own risk" per Texas statutory law and "at his peril" per Texas case law. Purchaser is not a consumer as that term is defined under Texas law. The sale of the property by Substitute Trustee is also subject to the following:

1. Loan reinstatement, payoff, or any other pre-sale arrangement with the Mortgagee to satisfy the default.
2. Any court-ordered or statutory restraint of sale arising out of bankruptcy, probate, divorce, receivership, or other court proceedings involving any person claiming a legal or equitable interest in the property.
3. Any other claim by those persons obligated on the debt that may render the sale void or voidable, including but not limited to claims of insufficient notice.
4. Any ad valorem taxes for the current and prior years which are applicable against the property.
5. Any other undisclosed matter which may affect the validity of the sale or act as a defense or bar to the foreclosure proceeding.
6. Any errors in the calculation of the bidding instructions or errors in reading the bid made by either the Trustee, Mortgage Servicer or Mortgagee.

The interests in the property being sold are limited to those expressly warranted by the Grantor in the Deed of Trust, subject to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust. No representation of any kind, either expressed or implied, is made by Substitute Trustee regarding the nature or status of the property, the quality of title, or any interests that may be superior to the deed of trust interests being foreclosed. Purchaser takes the property subject to such superior interests as well as any and all defects and shall be solely responsible for the resolution of each. Purchaser is buying the legal description of the land and not the commonly known as address.

In the event a defect or other problem with the foreclosure process is discovered that causes a rescission of the sale, the consideration paid will be returned to Purchaser pursuant to Tex. Property Code Section 51.016. In the event of any claim or action brought by any person other than Purchaser requiring or resulting in the invalidation of the sale and rescission of the Foreclosure Sale Deed, Purchaser's damages are limited to the consideration paid to Substitute Trustee and the sole and absolute remedy shall be the return to Purchaser the consideration paid.

If you are the successful bidder, you will be required to sign an acknowledgment that this administrant was read prior to Substitute Trustee commencing his or her sales and that the sale was subject to these terms. No sale will be concluded without execution of the acknowledgement and if the successful bidder is not inclined to execute the acknowledgement, we will reconvene the sale and open bidding back up to the public.

Purchaser acknowledges that the sale was subject to the terms, conditions, and disclaimers set forth above in the GENERAL ADMONISHMENT TO PURCHASER and that all monies tendered are subject to the terms, conditions, and disclaimers set forth above and in the RECEIPT below. Purchaser specifically acknowledges that he or she has carefully read both the GENERAL ADMONISHMENT TO PURCHASER set forth above and the RECEIPT set forth below.

Purchaser directs that the Grantee on the deed (to be available within a reasonable time after funds have cleared) should be shown as:

Name of Purchaser: MP + RP Investments LLC

Street Address: 85 NE Loop 410 Ste #205

City: San Antonio    State: TX    Zip: 78116

Telephone: _____    E-Mail: _____

DL Number/State: _____    EIN or SSN: _____

PURCHASER (s):

Signature: _____    Signature: _____

Printed Name: Edward Megina    Printed Name: _____

On the date shown above, Robert D Valdespino _____ as Substitute Trustee conducted a Foreclosure Sale on the property reference above. At 11:49 am o'clock am/pm, subject to the exceptions stated in the terms, conditions, and disclaimers announced before the sale and restated in the GENERAL ADMONISHMENT TO PURCHASER and the RECEIPT set forth above, the Substitute Trustee sold the property to the above named Purchaser(s) for the price of $96,522.75 _____, said amount being the highest bid for cash, who tendered to me the following in satisfaction of the purchase price:

CERTIFIED CHECKS TENDERED:

| Amount of Check | Bank Name | Check Number |
|---|---|---|
| $ 50,000.00 | Jefferson Bank | 118277 |
| $ 25,000.00 | Jefferson Bank | 118279 |
| $ 10,000.00 | Jefferson Bank | 118280 |
| $ 5,000.00 | Jefferson Bank | 118286 |
| $ 5,000.00 | Jefferson Bank | 118285 |
| $ | | |
| $ | | |
| $ | | |

Check Total: $ 95,000

Cash Total: $ 1,523

Total Tendered: $ 96,523

Overpayment: $ _____

In the event of an overpayment, all refunds will be made by the MORTGAGEE. Substitute Trustee assumes no responsibility or liability for any refunds.

Substitute Trustee Signature: _____    Date: 12/4/2018

Mackie Wolf Zientz & Mann, P.C. / 14160 N. Dallas Parkway, Ste. 900 / Dallas, Texas 75254 / (214) 635-2650 / info@mwzmlaw.com

Signature